Roth's Estate.

*William F. Dannehower, Sr.,* for accountant.
*Thomas Hallman,* for claimant.

HOLLAND, P. J., Feb. 11, 1929.—The adjudication in the above estate upon the first and final account of the executrix was confirmed *nisi* Oct. 2, 1928, and no exceptions thereto having been filed became absolute Oct. 12, 1928.

On Oct. 29, 1928, Perry Neiffer filed his petition alleging that he was the legatee referred to in the item of decedent's will, which is as follows: "I give and bequeath the sum of Five Hundred Dollars ($500) to whomever I shall be making my home with at the time of my decease."

He offered to prove facts from which could be inferred that he came within the description of the person with whom decedent was making her home at the time of her decease.

It appeared that the claimant had not received personal notice of the audit of the account, and that his attorney had not received any such notice, notwithstanding claimant's counsel had served notice upon counsel for the accountant that he represented the claimant who was claiming the $500 referred to in the said item of the will. Under the circumstances, accountant did not oppose opening the adjudication, and it was accordingly opened and a hearing had Nov. 28, 1928.

There were called as witnesses, Perry Neiffer, the claimant; his sister, Sarah M. Spare; W. E. Bartlett, a friend of Perry Neiffer; Catharine Roth, the decedent's sister; May Hallman, a neighbor of decedent; and Dr. H. Croskey Allen, the decedent's physician.

It developed from the testimony of these witnesses that decedent owned a double house, with about three acres of ground, in Limerick Township. She died seized of this house and piece of ground, June 14, 1927. In November, 1926, decedent invited claimant, Perry Neiffer, who was her cousin, to come and live in the house. The understanding and arrangement was that Neiffer was to have one side of the house, including one room and a kitchen on the first floor, two rooms on the second floor and one-half of the cellar. This was to be occupied exclusively by Neiffer, while decedent was to exclusively occupy the other side of the house, which was identically constituted. Claimant was to pay decedent $4 per month rent. Decedent and claimant were to share the fruit growing on the place. The cellar was also divided between decedent and claimant.

Claimant entered into possession of his half of the house November, 1926. He set up his own housekeeping, did his own cooking in his own kitchen, which he also used as his dining room. He kept his part of the premises in order and maintained his own private establishment. He kept his provisions in his part of the cellar. Decedent similarly maintained her own private establishment in the other half of the house. It appears that, before the claimant

came into possession, decedent had the house altered in certain particulars, thus to adapt it for the occupancy of two separate tenants.

The heater, which heated the entire house, was the only thing that was used jointly by them. Each paid for half the coal and both attended to the heater.

Claimant never paid decedent any rent, because decedent refused to take it, in consideration of the fact that claimant worked the garden and took general care of the grounds. So that claimant lived there rent free from November, 1926, to January, 1928, when the place was sold; the time of the sale, it being observed, being about a year after decedent's death.

It is apparent from these facts that the relation between decedent and claimant was that of landlord and tenant. Decedent owned the house and paid the taxes. She occupied one-half and rented the other half to claimant. Their establishments were distinct and separate. In no sense could it be said that decedent at any time was making her home with Perry Neiffer. The correctness of this conclusion is so clear and apparent that argument seems superfluous.

We, therefore, hold that Perry Neiffer does not answer the description of the possible legatee referred to in the said item of decedent's will, and his claim is disallowed.

And now, Feb. 11, 1929, the petition is dismissed, at the cost of the petitioner and the adjudication is reaffirmed absolutely.

From Aaron S. Swartz, Jr., Norristown, Pa.